**James C. TAYLOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–1003–CR–194.

Court of Appeals of Indiana.

Feb. 22, 2011.

Transfer Denied May 6, 2011.

Anthony S. Churchward, Deputy Public Defender, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

Appellant James C. Taylor appeals his convictions of burglary, a Class A felony, Indiana Code section 35–43–2–1 (1999); criminal deviate conduct, a Class B felony, Indiana Code section 35–42–4–2 (1998); and attempted rape, a Class B felony, Indiana Code sections 35–42–4–1 (1998) and 35–41–5–1 (1977). Taylor also appeals the jury's verdict that he is guilty but mentally ill of a second charge of criminal deviate conduct and of sexual battery, a Class D felony, Indiana Code section 35–42–4–8 (1998). Finally, Taylor appeals the jury's determination that he is a habitual offender, Indiana Code section 35–50–2–8 (2005), and the sentences that the trial

court imposed for his convictions. We affirm.

On January 10, 2008, M.G., who was seven months pregnant, was at home with her daughter, who was less than two years old. Looking out a window, M.G. saw a man who was later identified as Taylor approach her house. M.G. opened the door to see what Taylor wanted. After a brief conversation, during which Taylor asked M.G. if her boyfriend was at home and was told that her husband was at work, Taylor forced his way into the house. Taylor pushed M.G. over and got on top of her. Taylor and M.G. struggled as M.G.'s daughter watched. Taylor forced M.G. to remove her clothes and took off his clothes.

Taylor groped, fondled and licked M.G. He attempted to put his penis in her vagina but could not maintain an erection. At that point, Taylor remembered that the front door was open. When Taylor got up and closed the door, M.G. got up and ran out of the house into the backyard. M.G.'s daughter remained inside the house. Taylor chased M.G., who ran to her neighbor's garage and screamed for help. Taylor and M.G. struggled, and Taylor mocked M.G.'s cries for help when no one responded. Taylor then tried to convince M.G. to come back inside. M.G. refused, and Taylor became angry. M.G. agreed to have sex with him if they stayed outside, but Taylor was unable to maintain an erection. As they continued to talk, M.G. convinced Taylor to walk around the side of her house towards the front. As they walked along the side of the house, Taylor stopped them and again attempted to vaginally penetrate M.G. but could not.

M.G. and Taylor walked around to the front of the house and moved towards the front door. M.G. sat down on her front porch, stating that she was unable to go any further. Taylor attempted to coax and physically force M.G. to go to the front door, but at that point M.G. attracted the attention of a nearby pedestrian and screamed for help. That person stopped several passing motorists, who called the police. During this time, Taylor did not flee. Instead, he told the pedestrian that he and M.G. were fine and that M.G. was his girlfriend. Taylor also contradicted M.G. when she screamed out her house's address and attempted to mislead people as to the correct address. Taylor continued to yell at the bystanders that everything was fine until he heard sirens. At that point he attempted to reenter the house to get his clothes but discovered that he had locked the front door earlier. The police arrived and took Taylor into custody.

The State charged Taylor with the offenses identified above. At trial, Taylor argued that he was not guilty by reason of insanity. The jury returned its verdict, and the court sentenced Taylor to an aggregate sentence of eighty years.

Taylor raises three issues, which we restate as:

I. Whether the trial court abused its discretion by refusing Taylor's tendered instruction on residential entry as a lesser included offense of burglary.

II. Whether the trial court abused its discretion in admitting into evidence a letter Taylor wrote to a judge.

III. Whether Taylor's sentence is inappropriate in light of the nature of the offense and the character of the offender.

### I. JURY INSTRUCTION ON A LESSER–INCLUDED OFFENSE

The purpose of an instruction is to inform the jury of the law applicable to

the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind.2003). When a defendant requests a lesser-included offense instruction, the trial court must apply a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. *Hauk v. State*, 729 N.E.2d 994, 998 (Ind.2000). The trial court should grant the defendant's request for a lesser-included offense instruction if it answers the third inquiry affirmatively. *Id.*

■ In this case, Taylor tendered a jury instruction that would have informed the jury that residential entry is a lesser included offense of burglary. The trial court declined to give that instruction, stating "I cannot see how there could be a serious dispute as to the evidence." Trial Tr. p. 310. Therefore, our review is limited to whether the trial court properly determined that there is no serious evidentiary dispute whereby the jury could conclude that the lesser offense was committed but not the greater. In deference to trial courts' proximity to the evidence, we review a finding as to the existence or lack of a serious evidentiary dispute for an abuse of discretion. *McEwen v. State*, 695 N.E.2d 79, 84 (Ind.1998).

In *Wilson v. State*, 697 N.E.2d 466, 474 (Ind.1998), Wilson was convicted of murder and other offenses, and he appealed the trial court's rejection of his tendered jury instruction identifying reckless homicide as a lesser included offense of murder. Wilson argued that he was mentally ill, and

his intent was therefore in dispute. Our Supreme Court disagreed, noting, "[a]ny dispute raised by the insanity defense concerns whether a defendant had any culpable intent at all." *Id.* at 475. "Because a successful insanity defense would make Wilson nonculpable for any offenses he may have committed, the insanity defense cannot be the mechanism to demonstrate dispute entitling him to a lesser included instruction." *Id.* Consequently, the Court concluded that Wilson had not established an evidentiary dispute over which offense he may have committed, and the trial court correctly refused Wilson's instruction on reckless homicide. *Id.*

We are bound by our Supreme Court's determination that reckless homicide is an inherently included offense of murder. *Id.* at 474 (citing *Wright v. State*, 658 N.E.2d 563, 567 (Ind.1995)). These two cases so hold premised upon the concept that the only thing distinguishing the greater from the lesser crime is the "lesser culpability required to establish the commission of Reckless Homicide." *Wright*, 658 N.E.2d at 567. However, *Wilson* defined the concept a bit differently, stating that the only distinguishing feature is "the mens rea required of each offense." *Wilson*, 697 N.E.2d at 474. In so stating, the *Wilson* court construed the *Wright* decision to equate the "lesser culpability" language used with the "different mens rea required of each offense" as phrased in *Wilson*. In any event, neither *Wilson* nor *Wright* saw any significance in the fact that conduct which is merely reckless is incompatible with conduct which must be knowing or intentional. It would seem that a reasonable trier of fact might well conclude that a death was caused not by a knowing or intentional killing but rather was caused by conduct which was merely reckless. Nevertheless, again we are bound by the

previous pronouncements of our Supreme Court.

Our perceived uncertainty with respect to the holdings of *Wilson* and *Wright* does not address the issue directly presented in the case before us. Here, Taylor focuses upon the proposition that the jury could have reasonably determined that although he knowingly or intentionally entered M.G.'s residence, the State had not established that when he did so he had the specific intent to sexually assault M.G. He thus concludes that his "mental state and his mens rea were significant issues of fact, which were disputed at trial." Appellant's Br. p. 19. In the abstract, this argument carries a degree of cogency.

However, our analysis does not end with this argument. It is a given that just as reckless homicide is an inherently included offense of murder, so residential entry is inherently included in the offense of burglary. *Campbell v. State,* 732 N.E.2d 197, 207 (Ind.Ct.App.2000). Accordingly, we must apply the third prong of the test set forth in *Wright, supra,* and look to the evidence submitted in our particular case. Having done so and giving due deference to the determination of the trial court, we agree that there is no serious evidentiary dispute as to Taylor's intent to commit a felony when he knowingly or intentionally entered M.G.'s residence.

For this reason and without regard to what may or may not be a correct reading of the *Wilson* and *Wright* decisions, we hold that the trial court did not abuse its discretion in refusing to give the tendered instruction on residential entry.

## II.   ADMISSION OF TAYLOR'S LETTER

■   The admissibility of documents as exhibits is a matter within the trial court's discretion and will be reversed only upon a showing of an abuse of that discretion.

*Herrera v. State,* 710 N.E.2d 931, 938 (Ind. Ct.App.1999).

■   At trial, the court admitted as an exhibit a ten-page letter that had been written by Taylor and sent to Judge Schmoll of the Allen Superior Court. Taylor objected to the document on grounds that it was not properly authenticated. Indiana Evidence Rule 901 governs authentication or identification of exhibits and provides, in relevant part: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evidence demonstrating a reasonable probability that the exhibit is what it is claimed to be and that its condition is substantially unchanged as to any material feature is sufficient to establish the condition precedent to admissibility. *Herrera,* 710 N.E.2d at 938.

In *Thomas v. State,* 734 N.E.2d 572, 573 (Ind.2000), Thomas contended that the trial court erred by admitting into evidence a letter he had written to the trial court accepting responsibility for the murder with which he had been charged. Thomas argued that the letter lacked authentication. Our Supreme Court noted that Thomas' name was on the letter's return address, and the return address was the Arizona State Prison. *Id.* at 573–574. Thomas was incarcerated at the Arizona State Prison at the time the letter was written. Furthermore, in the letter Thomas demonstrated knowledge of witnesses and events related to the crime that were not likely known by anyone in that prison except for Thomas. The Court concluded that the State had laid an adequate foundation to authenticate the letter. *Id.* at 574.

In this case, the envelope in which the letter was sent bears a return address of "James Taylor, 1098 South State Road 25 Logansport, Indiana 46974." State's Ex. 117. The letter bears a date of "8/4/08." *Id.* On that date, Taylor was in the custody of the Logansport State Hospital. In the letter, which is unsigned but written in the first person from Taylor's point of view, the author describes events at M.G.'s house. The letter describes the encounter in a manner favorable to Taylor, stating that Taylor and M.G. engaged in consensual sex and that M.G. attacked Taylor and ran out of the house when he tried to leave. Nevertheless, the letter corroborates details about the house and the encounter that only someone who had been involved would be likely to know, including a plant being knocked over in the house, the sequence of events occurring first in the house, then in the backyard, and finally in the front of the house, and M.G.'s offer of money to Taylor during the encounter. For these reasons, we conclude that the State established a foundation for the admission of the letter pursuant to Indiana Rule of Evidence 901, and the trial court did not abuse its discretion by admitting the letter. *See Thomas,* 734 N.E.2d at 574.

### III. APPROPRIATENESS OF SENTENCE

■■ Taylor's sentencing challenge is governed by Indiana Appellate Rule 7(B), which provides, in relevant part, "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We may look to any factors appearing in the record to conduct the examination. *Schumann v. State,* 900 N.E.2d 495, 497 (Ind.Ct.App.2009). The burden is on the defendant to persuade us that his sentence is inappropriate. *Major v. State,* 873 N.E.2d 1120, 1130 (Ind.Ct. App.2007), *trans. denied.*

The "nature of the offense" portion of the standard articulated in Appellate Rule 7(B) speaks to the statutory advisory sentence for the class of crimes to which the offense belongs. *Id.* Our Supreme Court has noted that the advisory sentence is the "starting point" the Legislature has selected as an appropriate sentence for the crime committed. *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind.2007). However, this court has held that although the advisory sentence may be the appropriate sentence, it is not a "mandatory starting point." *Richardson v. State,* 906 N.E.2d 241, 245 (Ind.Ct.App.2009). For our purposes of review under Appellate Rule 7(B), we will first look to the advisory sentence to guide us in determining whether the sentence imposed is appropriate given the nature of the offense and the character of the offender.

At the time Taylor committed his crimes, the advisory sentence for a Class A felony was thirty years, with a minimum of twenty years and a maximum of fifty years. Ind.Code § 35–50–2–4 (2005). Furthermore, the advisory sentence for a Class B felony was ten years, with a minimum of six years and a maximum of twenty years. Ind.Code § 35–50–2–5 (2005). Finally, the advisory sentence for a Class D felony was one and a half years, with a minimum of six months and a maximum of three years. Ind.Code § 35–50–2–7 (2005).

In this case, the trial court sentenced Taylor to forty years on the burglary conviction, which was ten years less than the maximum sentence. In addition, the trial court enhanced the burglary sentence by thirty years due to the habitual offender

determination. The trial court did not enter a judgment of conviction upon the battery conviction but stated that that conviction was "merged" into the burglary conviction for sentencing purposes. Furthermore, the trial court sentenced Taylor to ten years for each criminal deviate conduct conviction, ten years for the attempted rape conviction, and one and one half years for the sexual battery conviction, which was the advisory sentence for each offense. The trial court ordered that all of the non-burglary sentences would be served concurrently with one another and consecutive to the burglary conviction, for an aggregate sentence of eighty years.

The nature of the offenses is brutal. Taylor attacked a woman who was in her seventh month of pregnancy, in the presence of M.G.'s child, who was less than two years old. As a result of the attack, M.G. went into early labor that same day and had to receive treatment to stop contractions. Furthermore, the child who was present during the attack has experienced continuing psychological problems. In addition, the encounter between Taylor and M.G. lasted over an hour, and Taylor had numerous opportunities to end his criminal conduct but chose to persist.

The character of the offender portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Major*, 873 N.E.2d at 1131. Taylor has a criminal record consisting of twelve misdemeanor convictions and three prior felony convictions. His probation has been revoked twice. Taylor contends that many of his convictions are non-violent in nature, but we note that his record includes convictions for resisting law enforcement and battery by bodily waste. Furthermore, Taylor engaged in criminal conduct on a steady basis, accruing prior convictions in 1996, 1997, 1998, 2002, 2003, 2005, and 2007. Taylor's record demonstrates complete disregard for the law and the rights of others.

■ The trial court found that Taylor's history of mental illness is a mitigating factor,[1] but Taylor argues that his mental illness played such a significant role in his crimes that his sentence is inappropriate. There are several factors that bear on the weight, if any, which should be given to mental illness in sentencing. These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Krempetz v. State*, 872 N.E.2d 605, 615 (Ind.2007).

We begin with whether Taylor's mental illness caused him to be unable to control his behavior. Taylor was examined by two psychologists to ascertain his mental state on the day of the crimes. Both of the psychologists testified that Taylor was sane on that day. Dr. Kevin Wieland diagnosed Taylor with a "delusional disorder." Trial Tr. p. 265. Dr. Wieland further testified that the disorder did not cause Taylor to commit crimes, but rather that the delusions were a coping skill Taylor used after the fact "to absolve himself from guilt." Trial Tr. p. 267. Dr. Stephen Ross stated that Taylor could correctly identify appropriate or expected behavior and appreciate the wrongfulness of his conduct.

Next, regarding overall limitations on functioning, Dr. Ross indicated that he had diagnosed Taylor as having a "delusional system" when Taylor committed the

---

1. The trial court stated that but for Taylor's mental illness, he would have sentenced Taylor to "maximum consecutive terms." Sentencing Tr. p. 30.

crimes. Trial Tr. p. 236. However, Dr. Ross agreed with the statement that a person with such a disorder can be "otherwise functional." Trial Tr. p. 243. Dr. Ross also noted that Taylor had a low intelligence quotient, but the low score was a result of inadequate schooling rather than limited ability. During this case, Taylor was twice found incompetent to stand trial, but on both occasions Taylor regained competency with treatment.

Turning to the duration of Taylor's mental illness, the trial court noted, "the record is replete with mental health issues...." Sentencing Tr. p. 30. Jail records indicate that during Taylor's incarceration pending trial in this case, he exhibited delusional thought processes and was unable to control his behavior. Other records indicated that Taylor had been diagnosed as schizophrenic in the past. Nevertheless, the record does not uniformly reflect a history of mental illness. On two prior occasions, Taylor was evaluated and diagnosed as malingering.

Finally, Taylor has not established a nexus between his mental illness and the commission of the crimes that would render his sentence inappropriate. Two days before committing the crimes at issue, Taylor had approached the home of a different woman. Taylor had asked that woman if a boyfriend or husband was home before he was told to leave. Similarly, Taylor had asked M.G. if her boyfriend was home before attacking her. This behavior demonstrates a degree of planning and calculation. Furthermore, during his assault on M.G., Taylor paused to close and lock the front door. To Dr. Wieland, this behavior indicated that Taylor had the presence of mind to avoid detection. Dr. Wieland also testified that Taylor's delusional thought process did not cause him to commit the crimes but rather caused him

to believe after the fact that M.G. was his girlfriend in order to cope with guilt.

Based upon our consideration of these four factors, Taylor's mental illness bears little weight on our analysis of his character. *See Scott v. State,* 840 N.E.2d 376, 384 (Ind.Ct.App.2006), *trans. denied* (concluding that defendant's mental illness should have been given little weight where defendant was capable of controlling his behavior, did not have significant limitations on his functioning, and failed to identify a nexus between his mental illness and the offense). Consequently, Taylor has not carried his burden of persuading this Court that his sentence has met the inappropriateness standard of review. *Anglemyer,* 868 N.E.2d at 494.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and RILEY, J., concur.