**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 07 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KENNETH L. ROBINSON,               )
                                   )
    Appellant-Defendant,         )
                                   )
        vs.                  )      No. 49A02-1206-CR-514
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Peggy R. Hart, Master Commissioner
Cause No. 49G20-1109-FA-63711

**February 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kenneth L. Robinson appeals his conviction for possession of cocaine, as a Class C felony, following a jury trial.[1] Robinson raises the following two issues for our review:

1.  Whether the State's seizure of evidence from Robinson's home was in violation of his rights under either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution; and

2.  Whether the trial court abused its discretion when it admitted a jailhouse letter into evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 7, 2011, Indianapolis Metropolitan Police Department ("IMPD") dispatch received a 9-1-1 call from Claude Lynn, who stated that a black male wearing a t-shirt, do-rag, and blue jeans had just attempted to sell him crack cocaine at the Best Inn Motel. Officers Donald Barrett and Justin Musser responded to Lynn's call and met Lynn in the lobby of the motel. Lynn then further described the man who had attempted to sell him the cocaine as stocky with braided hair, and he stated that the man was accompanied by a thin woman. Lynn told the officers that the man had showed him the cocaine inside a baggie in a small, round mint can. He further told the officers that the suspects were in a green Ford Ranger in the motel's parking lot.

The officers observed a green Ford Ranger in the parking lot. There were no other cars matching Lynn's description in the parking lot. The officers approached the vehicle to investigate. As they did, they observed Robinson in the driver's seat and a woman in

---

[1] The trial court's order of judgment of conviction, a form document, erroneously states that Robinson pleaded guilty (along with acknowledging that he was found guilty by a jury) and that the court entered its judgment of conviction for a Class B felony.

2

the passenger seat. Robinson was wearing a t-shirt, do-rag, and shorts. As the officers approached, Robinson moved his hands out of sight below the dash. The officers twice ordered Robinson to show his hands before he complied.

Officer Barrett obtained Robinson's identification and returned to the patrol vehicle. As he was leaving, Robinson leaned forward onto the steering wheel and dropped his right hand down between his legs. Officer Musser ordered Robinson to put his hands on the steering wheel, which he had to do three times before Robinson complied. Officer Musser then removed Robinson from the vehicle.

Hearing the commotion, Officer Barrett returned to Robinson's vehicle. Officer Barrett immediately observed a round mint can inside the vehicle. The mint can was open and inside the can was a baggie with a white, rock-like powdery substance that Officer Barrett recognized as cocaine. The officers placed Robinson under arrest and searched his vehicle, during which they discovered electronic scales with a white powder on them and a box of plastic baggies.

On September 8, 2011, the State charged Robinson with dealing in cocaine, as a Class A felony, and possession of cocaine, as a Class A felony. On November 15, while Robinson was incarcerated in cell block 2T of the Marion County Jail, Brian Rodgers, the jail's mail clerk, collected a letter from Robinson's cell block. The letter was in a stamped envelope that listed Robinson's name, unique jail identification number, cell block, and street address of the jail as the return address. The letter began, "let me tell you what happened," and it continued:

> Okay, I met this lil 18 yr old bout two weeks before I get locked-up. She talking bout she wanna "fuck wit me" and "be on my team"-n-shit. So you

3

know me, I got a spot for her. Anyway, we at the truck stop/hotel out south sittin in my truck. The police walk up on us shining lights all in my shit. So the first thing I do is grab my shit out my pocket. He like: "stop moving, put your hands on the steering wheel."

Shit, I slide the shit to her before I do. This bastard instantly tells me to get out. So after we both out the truck (in cuffs), one police asks me if he can search my shit. I look over at the truck, the other dude was already in my shit.

Man why they say the dope was sittin right on the passenger seat in a container that was <u>open</u> and in "<u>plain view</u>." I'm guessing she tried to take it out the container but didn't have enough time before they pulled her ass out the truck. Well, she said she had no idea there was drugs in there and they let her go, locked me up.

State's Exh. 8 (emphases and errors in original).

The court held Robinson's jury trial on May 22, 2012, during which the trial court admitted the evidence seized from Robinson's vehicle and the jailhouse letter into evidence over Robinson's objections. At the conclusion of his trial, the jury found Robinson guilty of possession of cocaine, as a Class C felony. The court entered its judgment of conviction and sentenced Robinson accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Robinson appeals the trial court's admission of certain evidence. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. <u>Speybroeck v. State</u>, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. <u>Id.</u> In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence

4

in the defendant's favor.  Dawson v. State, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003), trans. denied.

## Issue One:  Evidence Seized from the Vehicle

Robinson first contends that the State's seizure of the evidence from his vehicle was unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.  Both of those constitutional provisions protect citizens from unreasonable searches and seizures.  See Hathaway v. State, 906 N.E.2d 941, 944-45 (Ind. Ct. App. 2009), trans. denied.  Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure.  Halsema v. State, 823 N.E.2d 668, 676 (Ind. 2005).  When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure.  Id.

However, in Terry v. Ohio, 392 U.S. 1, 30 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot.  Hardister v. State, 849 N.E.2d 563, 570 (Ind. 2006).  An investigatory stop allows a police officer to "temporarily freeze the situation in order to make an investigative inquiry."  Johnson v. State, 766 N.E.2d 426, 429 (Ind. Ct. App. 2002), trans. denied.  A Terry stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions.  Id. (citing Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 185-89 (2004)).  Reasonable suspicion entails

some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. Wilson v. State, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). Indiana has adopted the Terry rationale in determining the legality of an investigatory stop under Article I, Section 11. Id.

Further, tips from concerned citizens may justify a Terry stop. See Kellems v. State, 842 N.E.2d 352, 355 (Ind. 2006), rev'd on other grounds, 849 N.E.2d 1110 (Ind. 2006). Concerned citizens are "people who may have been victims of crime or have witnessed a crime." State v. Renzulli, 958 N.E.2d 1143, 1147 (Ind. 2011). "These individuals generally come forward with information out of a spirit of good citizenship and a desire to help law enforcement." Id. Tips from concerned citizens are inherently more reliable than anonymous tips and need not be corroborated since the citizen may be subjected to prosecution for false reporting. See Kellems, 842 N.E.2d at 355. Nonetheless, the test for determining the validity of a Terry stop is the totality of the circumstances before the officers. Id. at 356.

Based on the totality of the circumstances here, the investigating officers had a reasonable, articulable suspicion that criminal activity was afoot. The officers responded to a 9-1-1 call from Lynn.[2] The officers spoke to Lynn at the scene of the alleged crime, and he described Robinson, Robinson's female acquaintance, and Robinson's vehicle. The officers were able to generally verify Lynn's descriptions upon their observation of Robinson and his acquaintance in the green Ford Ranger in the motel's parking lot.

---

[2] Because Lynn identified himself to the IMPD, Robinson's repeated attempts to analogize his appeal to prior cases involving anonymous tipsters are not persuasive.

Further, the officers personally observed Lynn's demeanor and body language, which aided them in their ability to determine whether his claims merited further inquiry. See State v. Glass, 769 N.E.2d 639, 643 (Ind. Ct. App. 2002), trans. denied.

Accordingly, the officers' brief detention of Robinson to investigate Lynn's claims was supported by reasonable suspicion under the Fourth Amendment and Article I, Section 11. And, once the officers attempted to temporarily freeze the situation, Robinson's furtive behavior and his refusal to keep his hands within the officers' view further justified Officer Musser's order that Robinson get out of the vehicle, which resulted in the officers discovering the mint can with cocaine in plain view inside the vehicle. E.g., Zelmer v. State, 177 Ind. App. 636, 638-39, 380 N.E.2d 618, 620 (1978). The officers' Terry stop of Robinson was not contrary to law, and the trial court did not abuse its discretion when it admitted the evidence seized pursuant to that stop.

## Issue Two: Jailhouse Letter

Robinson further argues that the trial court abused its discretion when it admitted the jailhouse letter into evidence. Specifically, Robinson asserts that the trial court's admission of the letter was contrary to Indiana Evidence Rule 901 and that, to comply with Rule 901, the State was required to present the testimony of either a handwriting expert or someone familiar with Robinson's handwriting. We cannot agree with Robinson's conclusion that Rule 901 necessitates such a showing by the State.

Indiana Evidence Rule 901 states, in relevant part:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

7

(b) Illustrations. <u>By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule</u>:

     (1) Testimony of witness with knowledge. Testimony of a witness with knowledge that a matter is what it is claimed to be.

     (2) Nonexpert opinion on handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

* * *

     (10) Methods provided by statute or rule. Any method or authentication or identification provided by the Supreme Court of this State or by a statute or as provided by the Constitution of this State.

(Emphasis added.)

In <u>Thomas v. State</u>, 734 N.E.2d 572, 573 (Ind. 2000), Thomas contended that the trial court erred by admitting into evidence a letter he had written to the trial court accepting responsibility for the murder with which he had been charged. Thomas argued that the letter lacked authentication. Our supreme court noted that Thomas' name was on the letter's return address and that the return address was the Arizona State Prison. <u>Id.</u> at 573-74. Thomas was incarcerated at the Arizona State Prison at the time the letter was written. Furthermore, in the letter Thomas demonstrated knowledge of witnesses and events related to the crime that were not likely known by anyone in that prison except for Thomas. Our supreme court concluded that the State had laid an adequate foundation to authenticate the letter. <u>Id.</u> at 574.

Likewise, in <u>Taylor v. State</u>, 943 N.E.2d 414, 419 (Ind. Ct. App. 2011), <u>trans. denied</u>, Taylor attempted to have a letter he had written deemed inadmissible for lack of authentication. We held the letter was admissible, stating:

8

the envelope in which the letter was sent bears a return address of "James Taylor, 1098 South State Road 25 Logansport, Indiana 46974." State's Ex. 117. The letter bears a date of "8/4/08." Id. On that date, Taylor was in the custody of the Logansport State Hospital. In the letter, which is unsigned but written in the first person from Taylor's point of view, the author describes events at M.G.'s house. The letter describes the encounter in a manner favorable to Taylor, stating that Taylor and M.G. engaged in consensual sex and that M.G. attacked Taylor and ran out of the house when he tried to leave. Nevertheless, the letter corroborates details about the house and the encounter that only someone who had been involved would be likely to know, including a plant being knocked over in the house, the sequence of events occurring first in the house, then in the backyard, and finally in the front of the house, and M.G.'s offer of money to Taylor during the encounter. For these reasons, we conclude that the State established a foundation for the admission of the letter pursuant to Indiana Rule of Evidence 901, and the trial court did not abuse its discretion by admitting the letter.

Id.

Thomas and Taylor are controlling authority on Robinson's claim, and his attempt to distinguish them is unavailing. As in each of those cases, here the testimony of the jail's mail clerk demonstrated that the envelope that contained Robinson's letter listed Robinson's name, his unique jail identification number, his cell block, and the street address of the jail as the return address. The letter corroborates details about Robinson's Terry stop that only someone who had been involved would be likely to know, and the letter is written in the first person from Robinson's point of view. As such, we conclude that the State established a foundation for the admission of the letter pursuant to Evidence Rule 901, and the trial court did not abuse its discretion by admitting the letter.

**Conclusion**

In sum, the State lawfully stopped Robinson in the motel's parking lot pursuant to Terry v. Ohio. Thus, the trial court did not abuse its discretion in admitting the evidence

seized during that stop. Further, the State provided sufficient foundation for the admission of the jailhouse letter. Accordingly, the court did not abuse its discretion in the admission of that evidence. We affirm Robinson's conviction.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.