Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
**DANIEL DIXON**
Lawrence County Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ZANE PAYTON, )
　 )
　Appellant-Defendant, )
　 )
vs. ) No. 47A01-1211-CR-512
　 )
STATE OF INDIANA, )
　 )
　Appellee-Plaintiff. )

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable William Sleva, Judge
Cause No. 47D02-1108-FB-950

**July 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Zane Payton ("Payton") was convicted in Lawrence Superior Court of Class B felony robbery and ordered to serve a twelve-year sentence, with nine years executed in the Department of Correction and three years suspended to probation. Payton appeals his conviction and sentence and raises three issues, which we restate as:

I. Whether the trial court abused its discretion when it refused to instruct the jury on Class C felony robbery, a lesser included offense of Class B felony robbery;

II. Whether Payton's twelve-year sentence is inappropriate in light of the nature of the offense and the character of the offender; and,

III. Whether the trial court abused its discretion when it ordered Payton to pay restitution to the victim.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

Sixteen-year-old Payton and three other individuals were attending a party on August 9, 2011, when they decided to rob a Clark gas station in Mitchell, Indiana. After changing their clothes and donning masks, the group drove to the CVS drug store across Highway 37 from the Clark gas station and parked their vehicle.

Payton entered the gas station first and spoke to the gas station attendant, Sujan Singh. Matthew Green then physically restrained Singh, and was assisted by Tommy Jones. Jones was armed with a wooden rod or club similar in size to a police baton or nightstick. The fourth individual, Joshua Turner proceeded toward the counter with Payton.

2

Payton tried to open the cash register by striking several buttons. After his attempt to open the register failed, Payton and Turner took several cartons of cigarettes, Singh was released, and the group fled from the gas station. After the robbery, Singh discovered that an envelope containing $600 in cash that was placed beneath the cash register was missing.

The gas station's video surveillance system recorded the robbery, and as a result, the responding officers were able to provide descriptions of Payton and his accomplices to other officers patrolling the area. Officer Tyler Trueblood of the Lawrence County Sheriff's Department assisted in the investigation. At approximately 4:00 a.m., Officer Trueblood observed a speeding vehicle, and when he turned around to initiate a traffic stop, the vehicle began to speed up. Eventually the driver pulled the vehicle into a school parking lot and turned off its lights.

When Officer Trueblood turned his spotlight on the vehicle, he noted that one of the individuals was wearing a hat matching the description previously given. Officer Trueblood approached the vehicle and observed packages of cigarettes on the floorboard in plain sight. Another responding officer saw the club that had been used in the gas station robbery. Additional cartons of cigarettes were found in the truck bed and glove box. Payton was a passenger in the truck.

On August 11, 2011, Payton was charged with Class B felony armed robbery.[1] His jury trial commenced on September 18, 2012. At the close of evidence, the trial

---

[1] Payton was specifically charged with Class B felony "aiding armed robbery." Appellant's App. p. 12. There is no such offense. The statute governing accomplice liability does not create a distinct crime apart

3

court refused Payton's request for jury instructions on the lesser-included offenses of Class C felony robbery and Class D felony theft. Payton was convicted as charged.

Payton's sentencing hearing was held on October 18, 2012. The trial court considered Payton's age as a mitigating circumstance and his substantial juvenile history as an aggravating circumstance. The trial court then ordered Payton to serve a twelve-year sentence: nine years executed in the Department of Correction and three years suspended to probation. Payton also stated that he was willing to pay restitution and the trial court ordered him to pay $1150 in restitution to the Clark gas station.

Payton now appeals. Additional facts will be provided as necessary.

## I. Refused Jury Instructions

Payton argues the trial court abused its discretion when it refused to instruct the jury on Class C felony robbery, a lesser-included offense of Class B felony robbery. "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Taylor v. State, 943 N.E.2d 414, 416-17 (Ind. Ct. App. 2011) (citing Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003)), trans. denied. When a defendant requests a lesser-included offense instruction, the trial court must apply a three-part analysis: (1) determine whether the lesser-included offense is

---

from the underlying crime. Taylor v. State, 840 N.E.2d 324, 333 (Ind. 2006). An individual who aids another person in committing a crime is as guilty of the crime as the actual perpetrator. Specht v. State, 838 N.E.2d 1081, 1093 (Ind. Ct. App. 2005), trans. denied. In other words, "a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." Id.; see also Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense."). And an accomplice need not participate in each and every element of the crime in order to be convicted of it. Specht, 838 N.E.2d at 1092.

4

inherently included in the crime charged; if it is not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either inherently included or factually included, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. Id. at 417 (citing Hauk v. State, 729 N.E.2d 994, 998 (Ind. 2000)). Payton argues only that there was a serious evidentiary dispute at trial about whether he committed a lesser-included crime. The trial court should grant the defendant's request for a lesser-included offense instruction if it determines that that there was such a serious evidentiary dispute at trial. Id.

When faced with the issue of whether there is a serious evidentiary dispute about a lesser-included offense, the trial court must evaluate the evidence presented by both parties. Fisher v. State, 810 N.E.2d 674, 680 (Ind. 2004). If the trial court made an express finding on the existence or lack of such a dispute, our standard of review for a lesser-included offense instruction is abuse of discretion. True v. State, 954 N.E.2d 1105, 1108 (Ind. Ct. App. 2011). This deference reflects and recognizes the trial court's unique proximity to, and understanding of, the evidence. Champlain v. State, 681 N.E.2d 696, 700 (Ind. 1997). If the trial court makes no ruling as to whether there is a serious evidentiary dispute, the reviewing court will make a *de novo* determination based on its own review of the evidence. Garrett v. State, 964 N.E.2d 855, 857-58 (Ind. Ct. App. 2012), trans. denied. Here, the trial court did not make a explicit ruling on the evidence, but stated that the tendered, lesser-included instruction would not "meet" the three prong test cited above. Tr. p. 558.

Payton argues that he was entitled to an instruction on Class C felony robbery because there was a serious evidentiary dispute as to whether his accomplice was armed with a deadly weapon. First, we observe that it is undisputed that Class C felony robbery is an inherently lesser-include offense to Class B felony robbery. The element of committing the offense "while armed with a deadly weapon" elevates Class C felony robbery to Class B felony robbery. See Ind. Code § 35-42-5-1.

On the date Payton was charged, Indiana Code section 35-41-1-8 defined a "deadly weapon" as a weapon "that in the manner it is used; or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury."[2] Indiana Code section 35-41-1-25 defined serious bodily injury as "bodily injury that creates a substantial risk of death or that causes (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus."[3]

Payton's accomplice, Jones, was armed with a wooden rod similar in size to a police baton or nightstick. Ex. Vol., State's Ex. 50. Mitchell Police Department Officer Matt England testified that, like a police baton, the wooden rod or club Jones carried in this case could be used to inflict serious bodily injury on a person. Tr. p. 493. Officer England stated that if a person was struck in the head with the club it would be considered a deadly [] weapon." Id. Similarly, Officer Trueblood testified that a club such as the one that Jones carried can be used with deadly force. The officer also stated

---

[2] The definition of "deadly weapon" is now codified in Indiana Code section 35-31.5-2-86.

[3] The definition of "serious bodily injury" is now codified in Indiana Code section 35-31.5-2-292.

6

that use of the club to hit someone on "the right part of the head" could disable that person and cause serious bodily injury. Tr. p. 391.

The fact that the club was not actually used to harm the gas station attendant is immaterial because Payton and his accomplices certainly had the ability to use the club to cause serious bodily injury. See e.g. Gleason v. State, 965 N.E.2d 702, 708 (Ind. Ct. App. 2012) (stating "it does not matter if actual injuries were sustained by the crime victim, provided the defendant had the apparent ability to injure the victim seriously through his use of the object during the crime"). Moreover, the club was certainly used to intimidate and cause fear. We conclude that the evidence in this case indisputably establishes that Payton's accomplice, Jones, was armed with a deadly weapon. For these reasons, we conclude that the trial court did not abuse its discretion when it refused to instruct the jury on the lesser-included offense of Class C felony robbery.

## II. Inappropriate Sentence

Payton next argues that his twelve-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

7

In our review of sentences under this rule, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), trans. denied. Moreover, although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Trainor, 950 N.E.2d at 355; Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Payton's Class B felony armed robbery conviction subjected Payton to a sentence in the range of six to twenty years, with an advisory sentence of ten years. See Ind. Code § 35-50-2-5. He was ordered to serve twelve years, with three years suspended to supervised probation.

Payton argues that his sentence is inappropriate because he "played a lesser role in the crime." Appellant's Br. at 20. Robbery is a serious offense. Payton and his accomplices planned their crime and did so with the knowledge that the Singh, the gas station attendant kept cash in an envelope under the cash register. Singh was physically restrained and feared for his safety. We acknowledge that Payton was not armed with a

8

weapon and did not actually restrain Singh. But while his accomplices were restraining Singh, Payton stole cash and cigarettes.

Payton also argues that his sentence is inappropriate because he was only sixteen-years old when he committed this crime, and was therefore "unable to fully appreciate the significance of his actions until events had already unfolded around him." Appellant's Br. at 21. However, Payton's prior contact with the criminal justice system contradicts his argument. On more than one occasion, Payton was adjudicated a delinquent child for committing acts that would be criminal offenses if committed by an adult, including battery and two incidents of criminal mischief. On the date of sentencing for the instant offense, Payton had a pending delinquency petition for illegal consumption and operating a vehicle without a license. He was also adjudicated a runaway on two occasions. And perhaps most importantly, Payton was on probation for multiple juvenile delinquency adjudications when he committed this offense.

Payton actively participated in the gas station robbery, and his increased delinquent activity shortly before and after committing the instant offense demonstrates his inability to lead a law-abiding life, as well as his need for rehabilitation. For all of these reasons, we conclude that his twelve-year sentence, with three years suspended to probation, is not inappropriate in light of the nature of the offense and the character of the offender.

### III. Restitution

An order of restitution is a matter committed to the trial court's discretion. Sickels v. State, 982 N.E.2d 1010 (Ind. 2013). We will reverse the trial court's ruling only upon

9

a showing of abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. Id. Payton's argument concerning restitution is twofold: 1) whether the $1150 restitution amount is supported by the evidence; and 2) whether the trial court was required to hold a hearing on his ability to pay. At sentencing, Payton argued that although he was willing to pay restitution, the State had not proven an amount of restitution owed to the Clark gas station.

The trial court may "as a condition of probation . . . order the person to make restitution to the victim of the crime[.]" Ind. Code § 35-50-5-3. When restitution is ordered as a condition of probation "the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." Ind. Code § 35-38-2-2.3. A "court shall base its restitution order upon a consideration of: (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)[.]" I.C. § 35-50-5-3.

A. *Sufficient Evidence*

The trial court ordered Payton to pay $600 for the cash Singh testified was stolen from the envelope that was under the cash register prior to the robbery and $550 for the ten stolen cartons of cigarettes, or $1150 total. At sentencing, Payton argued that neither amount was supported by the evidence.

There is sufficient evidence in the record to support the $600 award. Singh testified that $600 cash was in an envelope underneath the register prior to the robbery. Payton and his accomplices discussed the fact that Singh kept cash under the register

prior to robbing the gas station. And Singh testified that after the robbery, the cash was gone.

However, as to the stolen cigarettes, the State did not present any evidence to establish their value, but rather, simply requested that Payton be ordered to pay restitution in the amount of $55 per carton for each of the ten stolen cartons, in the amount of $550. The trial court accepted that valuation after stating "I don't smoke but I hear a lot of testimony of what cigarettes cost. So I'll . . . determine what, if any amounts [are] proper." Tr. p. 633.

The trial court's general knowledge of the cost of cigarettes is not sufficient evidence to support the $550 award. This is particularly true where the gas station's cost to replace the cigarettes is likely less than the retail cost. The State should have presented evidence concerning the replacement cost of the stolen cigarettes. In lltzsch v. State, 981 N.E.2d 55, 57 (Ind. 2013), our supreme court concluded that where the trial court's restitution order is not supported by sufficient evidence, the proper remedy is to remand the case with instructions to conduct a new restitution hearing.

B. *Payton's Ability to Pay Restitution*

Payton stated at the sentencing hearing that he was willing to pay restitution. However, the trial court did not inquire into his ability to pay and there is no evidence in the record concerning Payton's financial resources.

Although Payton arguably waived this argument by stating that he was willing to pay restitution, because restitution was imposed as a condition of probation, he may be imprisoned for non-payment during his three-year term of probation. Given the possible

11

incarceration penalty Payton will face for non-payment of restitution, and because we are remanding this case for a new restitution hearing, we instruct the trial court to also inquire into Payton's ability to pay as required by Indiana Code section 35-38-2-2.3(a)(6).

## Conclusion

The trial court did not abuse its discretion when it refused to tender an instruction to the jury on Class C felony robbery, a lesser-included offense of Class B felony robbery. Moreover, Payton's twelve-year sentence is not inappropriate in light of the nature of the offense and the character of the offender. However, we reverse the trial court's restitution award and remand this case with instructions to hold a new restitution hearing.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

BAKER, J., and MAY, J., concur.