**Patrick J. TRAINOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 71A03–1010–CR–561.**

Court of Appeals of Indiana.

June 9, 2011.

Transfer Denied Sept. 1, 2011.

Jeffrey L. Sanford, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Patrick J. Trainor ("Trainor") was convicted in St. Joseph Superior Court of five counts of Class D felony counterfeiting and received an aggregate sentence of seven and one-half years, with the entirety of the sentence suspended subject to five years of probation. Trainor appeals and raises two issues, which we restate as:

I.  Whether the State presented insufficient evidence to support Trainor's convictions; and

II.  Whether Trainor's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

### Facts and Procedural History

On August 26, 2008, Indiana State Police Trooper Brad Kaizer ("Trooper Kaizer") pulled Trainor over and ticketed him for making an illegal U-turn. While Trooper Kaizer attempted to explain the citation, Trainor repeatedly asked Trooper Kaizer where he lived, but Trooper Kaizer refused to answer. Later that afternoon, Trooper Kaizer received a phone call at his home from an unfamiliar number, and the male caller asked if he had reached Trooper Kaizer's residence. The caller also read off Trooper Kaizer's address and asked for confirmation that Trooper Kaizer lived there. Trooper Kaizer recognized the caller's voice as Trainor's and refused to answer his questions.

A few days later, Trooper Kaizer placed a phone call from the police post to the number from which the call to his home had been made. A man answered the phone, and Trooper Kaizer asked to speak to Trainor. The man responded that he was Trainor, and when Trooper Kaizer identified himself and asked why Trainor had called him at home, Trainor hung up.

A few weeks later, Trooper Kaizer began receiving various collectible items in the mail that neither he nor any member of his household had ordered. Trooper Kaizer contacted the company that had sent many of the items and informed the company's representative that he had not placed the orders. The company cancelled all outstanding billings and unshipped orders and provided Trooper Kaizer with several of the original order forms it had received for items that had been ordered in his name.

Trooper Kaizer turned the order forms over to Indiana State Police Detective Donald Curl ("Detective Curl"). Detective Curl undertook an investigation of Trainor after learning that Trooper Kaizer suspected that Trainor may have placed the orders. During the course of the investigation, Detective Curl obtained handwriting exemplars from Trainor for comparison to the order forms. A forensic document examiner with the Indiana State Police Laboratory conducted an analysis of the order forms and Trainor's handwriting exemplars and concluded that Trainor had filled out the forms.

As a result, on June 9, 2009, the State charged Trainor with five counts of Class D felony counterfeiting. A bench trial was held on August 13, 2010, and the court took the matter under advisement. On August 18, 2010, the trial court found Trainor guilty as charged. On October 4, 2010, the trial court sentenced Trainor to eighteen months on each count to run consecutively, for an aggregate sentence of seven and one-half years, with the entirety of the sentence suspended subject to five years of probation. Trainor now appeals.

## I. Sufficiency of the Evidence

■ Trainor first claims that the State presented insufficient evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind.Ct.App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind.Ct.App.2008).

To establish that Trainor committed Class D felony counterfeiting, the State was required to prove that Trainor knowingly or intentionally "ma[de] or utter[ed] a written instrument in such a manner that it purports to have been made: (A) by another person; (B) at another time; (C) with different provisions; or (D) by authority of one who did not give authority[.]" Ind.Code § 35–43–5–2 (2004). "Written instrument" is defined as "a paper, a document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings (including a universal product code (UPC) or another product identification code), or other objects or symbols of value, right, privilege, or identification." Ind.Code § 35–43–5–1(t) (2004).

Trainor argues that the evidence was insufficient to support his convictions be-

cause the order forms he filled out in Trooper Kaizer's name were not "written instruments" within the meaning of the counterfeiting statute "because they have no value, they create no privilege, and they are not objects of identification." Appellant's Br. at 10. But the statutory definition of written instrument is not limited to "objects or symbols of value, right, privilege, or identification." *See* I.C. § 35–43–5–1(t). Rather, a written instrument is defined as "a paper, a document, or other instrument containing written matter *and includes*" a list of specific items and "other objects or symbols of value, right, privilege, or identification." *Id.* (emphasis added). The order forms undoubtedly constitute papers, documents, or other instruments containing written matter, and thus fall within the statutory definition of written instrument.[1]

Moreover, we conclude that the order forms were objects or symbols of value because they caused Trooper Kaizer to receive items of value and created corresponding debt obligations in his name. Trainor argues that the order forms were not objects of value because they "do not automatically entitle one to an item depicted on the order form[.]" Appellant's Br. at 9. In support of this argument, he points out that the language on three of the order forms indicates that items will be shipped after partial payment is received. Appellant's App. pp. 77–81. Additionally, four of the order forms provide that orders are subject to acceptance, and the remaining form provides that all orders "are subject to product availability and credit approval." *Id.* But the possibility that an order may not be accepted, an item may not be available, or that a company may decline to extend credit to a prospective purchaser does not mean that such a purchaser is not

obligated to pay for the item he or she has ordered in the absence of such circumstances. Similarly, the fact that an item may not be shipped until payment is received does not mean that a party is not obligated to pay once an order has been placed and accepted. And in any event, Trooper Kaizer testified that he actually received each of the five items depicted in the order forms without making any payments. Trial Tr. pp. 69–73, 86. For all of these reasons, we conclude that the State presented sufficient evidence to support Trainor's convictions of Class D felony counterfeiting.

## II. Sentencing

Trainor also argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State*, 905 N.E.2d 57, 64 (Ind.Ct. App.2009) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007)). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Anglemyer*, 868 N.E.2d at 491. However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866

---

1. Our holding is limited to the facts and circumstances before us. We do not consider whether letters from Santa Claus and the like constitute prosecutable crimes.

N.E.2d 858, 866 (Ind.Ct.App.2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind.2007).

Trainor committed five counts of Class D felony counterfeiting, for which the sentence range is six months to three years, with an advisory sentence of one and one-half years. Ind.Code § 35–50–2–5 (2004). Trainor received the advisory sentence of one and one-half years on each count to run consecutively, for an aggregate sentence of seven and one-half years, and the entirety of the sentence was suspended subject to five years of probation.[2] Trainor argues that his sentence is inappropriate because he has no criminal history, he has maintained gainful employment throughout his adult life, and his conduct did not cause "substantial emotional or fiscal harm" to Trooper Kaizer. Appellant's Br. at 11. We disagree.

Considering the nature of the offense, we note that Trainor committed these crimes to retaliate against Trooper Kaizer for carrying out his duties as a police officer by issuing Trainor a traffic citation. And although Trainor was convicted of five counts of counterfeiting based on five orders he placed in Trainor's name, Trooper Kaizer testified that many other orders were placed in his name. Although Trooper Kaizer was not ultimately required to pay for any of the items, he had to devote a great deal of time and effort to cancelling orders and returning items. Additionally, some of the debts Trainor fraudulently created in Trooper Kaizer's name had been turned over to collection agencies. If Trooper Kaizer had not been proactive in monitoring his credit and disputing these debts, his credit rating could have been damaged. Thus, although Trooper Kaizer

has not suffered financial ruin, this is due solely to his own efforts to minimize the fallout from Trainor's misuse of his identity, and we fail to see how it mitigates the seriousness of Trainor's crimes.

Regarding the character of the offender, we note that Trainor failed to take full responsibility for his crime, calling it "a prank" and referring to Trooper Kaizer as "[o]ver zealous." Sentencing Tr. pp. 25, 28. And while it is true that Trainor has no criminal history and has generally been a productive member of society, the trial court demonstrated laudable lenience when it ordered Trainor's sentences suspended, subject to five years of probation. Under these facts and circumstances, we cannot conclude that Trainor's suspended aggregate sentence of seven and one-half years is inappropriate.

### Conclusion

The State presented sufficient evidence to support Trainor's convictions of Class D felony counterfeiting. Trainor's suspended seven and one-half-year aggregate sentence was not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

---

2. Trainor makes no argument that the trial court abused its discretion by ordering his sentences to run consecutively.