## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 07 2015, 10:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Henry Shorter, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 7, 2015 <br><br> Court of Appeals Case No. 20A05-1409-CR-438 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Cause No. 20C01-1301-FB-6 |

**Mathias, Judge.**

[1]     Henry Shorter ("Shorter") was convicted in Elkhart Circuit Court of Class A felony burglary and Class B felony robbery while armed with a deadly weapon. Shorter also admitted to being an habitual offender. The trial court sentenced Shorter to an aggregate term of sixty years. Shorter appeals and argues that his

sentence is inappropriate in light of the nature of the offenses and his character. Concluding that Shorter's sentence is not inappropriate, we affirm. However, we remand with instructions that the trial court attach the habitual offender enhancement to the sentence imposed on Shorter's Class B felony conviction, not as a separate, consecutive sentence.

## Facts and Procedural History

On January 8, 2013, Shorter and his fourteen-year-old stepson, L.S., went to the home of Ricky Beaver ("Beaver"). Also at the home was Raymond Cross ("Cross"). Shorter told Beaver and Cross that he had a "lick" for them, which meant to rob someone. Tr. p. 278. When Cross asked where the robbery would occur, Shorter stated that the potential robbery victim was an illicit drug dealer who had money, drugs, and a safe, but who did not carry a firearm. Shorter was referring to Willie Warren ("Warren"), who he referred to as "Woodchuck." Tr. pp. 287-88. Cross and Beaver agreed to rob Warren, and Beaver already knew where Warren lived.

Shorter drove L.S., Beaver, and Cross in a Jeep owned by one of their acquaintances to the apartment complex where Warren lived. In the vehicle, the four discussed their plan for the robbery. Each participant had a ski mask, except for Shorter. When they arrived at the apartment complex, Shorter parked the Jeep near Warren's apartment. Cross, Beaver, and L.S. put on their masks and got out of the vehicle and went to Warren's apartment. Shorter remained in the Jeep.

[4] Cross knocked on the door of Warren's apartment, and a woman opened the door. Beaver then pulled out a handgun, pushed the door open, and ordered the woman to lie face down on the couch. Beaver went into Warren's bedroom, where Warren was with another woman. Beaver started to rummage around the room while Cross and L.S. remained near the front door. Beaver struck Warren in the head with the gun while asking him "where the stuff was at." Tr. p. 301. Beaver eventually left the bedroom, telling his companions that he couldn't find any of the drugs, money, or the safe mentioned by Shorter. After a search of the kitchen revealed nothing, Cross told Beaver that they should leave.

[5] In the meantime, a young boy came running out of a back bedroom to be with the woman lying on the couch. At some point, this woman telephoned the police. When Cross told Beaver again that they should leave, Beaver grabbed a laptop computer, and the men ran back to the Jeep and fled the scene at a high rate of speed. Cross asked Shorter and Beaver why there had been no drugs in the apartment, and Shorter responded, "they must have just picked stuff up." Tr. p. 305. Before the four men could return to Beaver's house, however, they were stopped by the police, who had been dispatched to the scene of the robbery and were looking for the vehicle used by the robbers. The police arrested Shorter, L.S., Cross, and Beaver, and found in the Jeep the stolen laptop computer, the ski masks used by the robbers, and the handgun used by Beaver, which was a BB gun, not a firearm.

[6] On January 15, 2013, the State charged Shorter with Class B felony robbery while armed with a deadly weapon. The State later added a charge of Class A felony burglary. Following a jury trial held on August 4 – 6, 2014, the jury found Shorter guilty as charged. Shorter then admitted to being an habitual offender.

[7] At the September 4, 2014, sentencing hearing, the trial court found as aggravating Shorter's criminal history, that a child was present when the offense occurred, and that Shorter involved his teenage stepson in the crimes. The trial court also noted that Shorter was on probation for another offense when the instant offenses were committed. The court found as mitigating that Shorter did not go into the residence himself and that Shorter admitted to being an habitual offender. The trial court found that the aggravating factors outweighed the mitigating factors and imposed the following sentences: forty-five years on the Class A felony burglary conviction, a concurrent sentence of twenty years on the Class B felony robbery conviction, and fifteen years on the habitual offender enhancement, to be served consecutively to the other sentences, for an aggregate term of sixty years of incarceration. Shorter now appeals.

## Discussion and Decision

[8] Shorter argues that his sixty-year sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In our review of sentences under this rule, appellate courts

must exercise deference to the trial court's sentencing decision, both because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Williams v. State*, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013) (citing *Trainor v. State,* 950 N.E.2d 352, 355 (Ind. Ct. App. 2011)).

[9]     Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State,* 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied* (citing *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008)). Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees-consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Williams,* 997 N.E.2d at 1165. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Id*. (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)).

[10]    Shorter was convicted of Class A felony burglary and Class B felony armed robbery. The sentencing range for a Class A felony is twenty to fifty years, with the advisory sentence being thirty years. *See* Ind. Code § 35-50-2-4(a). The sentencing range for a Class B felony is six to twenty years, with an advisory

sentence of ten years. *See* Ind. Code § 35-50-2-5(a). In addition, Shorter admitted to being an habitual offender. A person found to be an habitual offender shall be sentenced "an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years." Ind. Code § 35-50-2-8(h) (2005). If the habitual offender enhancement was attached to Shorter's Class A felony conviction, the enhancement would have been thirty years; and if attached to the Class B felony conviction, it would have been between ten and thirty years. Shorter accordingly faced a possible sentence of up to one hundred years.[1] The trial court sentenced Shorter to sixty years. With this in mind, we address Shorter's argument that his sentence is inappropriate.

[11] With regard to the nature of the offense, although Shorter did not actually go into the house, it was his idea to rob Warren. He also involved his fourteen-year-old stepson in the robbery. The robbery itself resulted in Warren being struck on the head and took place in the presence of a young child. This supports the trial court's decision to sentence Shorter to greater than the advisory sentences.

[12] Turning to the character of the offender, we find further support for the trial court's sentencing decision. Shorter's problems with the law began as a

---

[1] Because both burglary and robbery, as Class A or B felonies, are considered "crimes of violence" for purposes of the consecutive sentencing statute, the trial court was not limited by the "episode of criminal conduct" provision of that statute. *See* Ind. Code § 35-50-1-2 (2013). Still, the trial court exercised its discretion to order the sentence on the Class B felony conviction to run concurrently with that on the Class A felony conviction.

juvenile, when he had referrals for truancy, possession of stolen property, and harassment. As an adult, Shorter's legal issues grew. At the time of the sentencing hearing, Shorter had seven prior misdemeanor convictions. Most of these misdemeanor convictions were for driving without a license or with a suspended license but also include one conviction for resisting law enforcement. Shorter also has convictions for Class D felony criminal recklessness while armed, Class D felony battery on a pregnant woman, and Class B felony dealing in cocaine.[2] Not only had Shorter twice violated the terms of his probation, he was on probation at the time of the instant offenses.

[13] Given these facts and circumstances, we are unable to say that the sixty-year aggregate sentence imposed by the trial court was inappropriate in light of the nature of the offense and the character of the offender.

[14] However, the State correctly notes that the trial court treated the habitual offender enhancement as a separate sentence to be served consecutively to the other sentences imposed. *See* Appellant's App. p. 30 ("the Court ORDERS that the Habitual Criminal Offender enhancement under this cause to be served consecutive to the sentences imposed under Counts I & II."). This is improper. An habitual offender adjudication does not constitute a separate crime, nor does it result in a separate sentence. *See Reffett v. State,* 844 N.E.2d 1072, 1074 (Ind. Ct. App. 2006) (citing *Greer v. State,* 680 N.E.2d 526, 527 (Ind. 1997)). Instead, an habitual offender finding results in a sentence enhancement

---

[2] The pre-sentence investigation report is not entirely clear as to whether Shorter was convicted of two counts of Class B dealing in cocaine or only one. *See* Appellant's App. p. 62.

imposed upon the conviction of a subsequent offense. *See id.* Thus, "trial courts must impose the resulting [habitual offender] enhancement upon only one of the convictions and must specify the conviction to be so enhanced." *Greer,* 680 N.E.2d at 527.

The trial court erred by ordering the habitual offender enhancement to run as a separate sentence. Accordingly, we reverse this portion of the trial court's sentencing order and remand with instructions that the trial court enhance the sentence on Shorter's Class B felony conviction by fifteen years, leaving the aggregate sentence at sixty years.

Affirmed in part, reversed in part, and remanded with instructions.

May, J., and Robb, J., concur.