## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 07 2015, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Comer, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | October 7, 2015 <br><br> Court of Appeals Case No. <br> 15A04-1503-CR-102 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause No. <br> 15C01-1310-FB-41 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Joshua Comer was involved in three separate drug transactions with an undercover police officer in which the officer purchased heroin from Comer and his accomplices. Comer was convicted of Class B felony dealing in a narcotic drug (heroin) and sentenced to a fifteen-year term of incarceration. Comer requests that this court revise his sentence pursuant to Indiana Appellate Rule 7(B). We affirm Comer's sentence.

# Facts and Procedural History

[2] On September 30, 2013, Detective Nicholas Beetz, while working undercover with the Dearborn County Special Crimes Unit, bought 5.7 grams of marijuana from Mary Jane Smith in the parking lot of a Greendale, Indiana White Castle. On October 15, 2013, Detective Beetz again met Smith at the White Castle parking lot to conduct a second controlled buy. This time, Smith was accompanied by Comer, Lamocres Johnson, and a confidential informant. Smith indicated that Comer and Johnson were her suppliers. Detective Beetz purchased 1.2 grams of heroin for $300 and 7.5 milligrams of hydrocodone for $70 from Smith. The confidential informant later informed Detective Beetz that Comer was dealing heroin.

[3] On October 21, 2013, Detective Beetz again met Comer and the confidential informant at the Greendale White Castle. Detective Beetz negotiated with Comer over the price of the heroin and ultimately purchased two grams of

heroin for $460. The following week, Detective Beetz spoke to Comer on the phone several times to set up another heroin buy. On October 29, 2013, Detective Beetz, while equipped with a recording device, met Comer and Johnson at the Greendale White Castle to carry out the buy. Detective Beetz approached Comer's vehicle and spoke to Comer through the window. Comer then handed Detective Beetz a crumpled piece of loose-leaf paper containing a mixture of crushed Ibuprofen and heroin which had a net weight of 1.98 grams. Detective Beetz then paid Comer $600 and returned to his vehicle. Soon after leaving the White Castle, officers stopped and arrested Comer and Johnson.

[4] The State charged Comer with three counts of Class B felony dealing in a narcotic drug (heroin), two counts of Class B felony conspiracy to commit dealing in a narcotic drug, Class B felony dealing in a schedule II controlled substance (hydrocodone), Class B felony conspiracy to commit dealing in a schedule II controlled substance, and Class D felony maintaining a common nuisance. A jury found Comer guilty of one count of dealing in a narcotic drug and one count of conspiracy to commit dealing in a narcotic drug.

[5] On December 15, 2014, the trial court sentenced Comer to fifteen years of imprisonment for dealing in a narcotic drug and vacated the conspiracy conviction to avoid double jeopardy issues. In its pronouncement of sentence, the trial court identified the following aggravating circumstances:

> First of all: criminal history. The Court finds that…the
> defendant has a significant criminal history. He's only 26 years
> of age, has approximately ten prior convictions, including a

crime of violence for assault and domestic violence, multiple contempt of court findings, which the defendant indicates are for failure to appear. In addition, according to the testimony of Detective Beetz, defendant was involved in multiple other drug deals conducted in Dearborn County….[D]efendant's involvement in these other dealing activities on October 15, 2013, October 21, 2013, shows his significant involvement with illegal drugs. For example, while co-defendant Smith provided illegal drugs to an undercover officer on 10/15/13, Comer communicated with Smith and appeared to be directing her activities, and Comer and Smith left together after the deal was concluded….The Court also considers defendant's lack of remorse and dishonesty with the Court. In addition, the Court finds that Defendant Comer has attempted to portray Defendant Smith as the "ring leader" in these transactions. The evidence does not support Mr. Comer's statements….Comer's attempt to avoid the truth is consistent with the mental evaluation of Dr. Cresci, which was requested by the defendant for the competency evaluation. Dr. Cresci stated it might be said Mr. Comer is highly manipulative.

Tr. pp. 674-76. The trial court also considered Comer's mental health history as a potential mitigating factor, however gave it little weight because the mental health professionals who evaluated Comer reported no such symptoms and suggested that Comer was malingering.

# Discussion and Decision

[6] Comer was convicted of a Class B felony which carried a potential penalty of between six and twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5 (2014). Comer argues that his fifteen-year sentence is inappropriate in light of the nature of his offenses and his character.

"Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender." *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "An appellant bears the burden of showing both prongs of the inquiry favor revision of [his] sentence." *Id*. (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). In conducting a Rule 7(B) analysis, "[t]he principal role of appellate review should be to attempt to leaven the outliers…not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We must give 'deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), *trans. denied*.).

Comer argues that the nature of his offense is less reprehensible because the substance he sold to Detective Beetz on October 29, 2013 was heavily cut with Ibuprofen, contained very little heroin, and that "it is arguably worse to deal 1.98 grams of pure heroin than 1.98 grams of crushed up ibuprofen with a trace amount of heroin." Appellant's Br. p. 9. Comer also argues that the legislature's recent amendments to the Indiana criminal code have reduced the punishments for drug-related crimes and that, although his crimes were

committed before those changes took effect, leniency in sentencing is nevertheless appropriate here in light of those changes.

[9] In regards to Comer's second argument requesting leniency in light of the revised Indiana criminal code, this court has previously addressed the same argument and found it without merit.

> Generally speaking, the sentencing statutes in effect at the time the defendant committed the offense govern the defendant's sentence. However, the doctrine of amelioration provides an exception to this general rule where a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime. Notably, the doctrine of amelioration does not apply where the legislature, in a specific saving clause, expressly states an intention that crimes committed before the effective date of the ameliorative amendment should be prosecuted under prior law.

> Here, the General Assembly, in enacting the new criminal code, also enacted savings clauses. Specifically, both Indiana Code section 1-1-5.5-21 and section 1-1-5.5-22 state that the new criminal code "does not affect: (1) penalties incurred; (2) crimes committed; or (3) proceedings begun" before the effective date of the new criminal code sections, i.e., July 1, 2014. These sections also provide that "Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if [the new criminal code] had not been enacted." *Id.* And, in no uncertain terms, these sections state: "The general assembly does not intend the doctrine of amelioration…to apply to any SECTION [of the new criminal code]." *Id.*

> It is abundantly clear from these statutes that the General Assembly intended the new criminal code to have no effect on criminal proceedings for offenses committed prior to the enactment of the new code. We think this is true with regard to considering the appropriateness of a sentence under Appellate Rule 7(B); we are to proceed as if the new criminal code had not been enacted.

*Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014) *trans. denied* (citations omitted).

[10] Comer's first argument, that his dilution of the heroin mitigates the seriousness of his offense, is undercut by the fact that this was not a single, isolated transaction. During a one-month period, Comer was involved in three separate heroin deals with Detective Beetz in which Beetz purchased a total of approximately five grams of heroin from Comer and his accomplices. Had Comer sold this amount to Detective Beetz in one transaction, he would have been guilty of a Class A felony and subject to considerably more jail time.[1] Furthermore, we do not consider Comer's deceit as to the purity of the heroin sold to Detective Beetz to be meaningfully mitigating.

[11] With regard to the nature of his character, Comer states that he "has mental health issues," appellant's br. p. 11, but offers no details on those issues or why they justify a reduced sentence. In fact, the mental health professionals who

---

[1] Under Indiana Code section 35-48-4-1 (2014), the offense of dealing in a narcotic drug becomes an A felony when the amount of the drug involved weighs three grams or more.

evaluated Comer found no symptoms of mental health problems and suggested that Comer was malingering.

[12] As the trial court noted in its sentencing statement, Comer's character justified an enhanced sentence. Although Comer has no prior felony convictions, he has ten prior misdemeanor convictions in a span of just five years. Those convictions include assault and domestic battery, possession of marijuana, providing a false name or address to a police officer, and several convictions for criminal trespass. The trial court also found that Comer lacked remorse for his crimes and was dishonest with the court on several occasions. Comer attempted to portray Smith as the ring leader despite the fact that he "appeared to be directing her activities" with regards to the drug deals. Tr. p. 674.

[13] Comer's fifteen-year sentence falls between the advisory ten-year term and the maximum twenty-year term. As explained above, there were several aggravating circumstances and no significant mitigating circumstances. Accordingly, a sentence in excess of the advisory term is warranted. Comer has failed to meet his burden of showing that his sentence is inappropriate in light of his character or the nature of his offense.

[14] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.