## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 28 2018, 10:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scotty R. Irvin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 28, 2018<br><br>Court of Appeals Case No.<br>18A-CR-856<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Michael A. Christofeno, Judge<br><br>Trial Court Cause No.<br>20C01-1612-MR-9 |

**Mathias, Judge.**

[1] Scotty Irvin ("Irvin") appeals his sentence of sixty-four years for a murder conviction from the Elkhart Circuit Court. Irvin argues that the sentence is inappropriate in light of his character and the nature of the offense.

[2] We affirm.

## Factual and Procedural History

[3] Irvin was married to Tifanee Burrows ("Burrows") for approximately nineteen years. In late 2015, Burrows asked for a separation. In February of 2016, Irvin moved out of the family's home. Burrows filed for divorce in March of 2016. After Burrows filed for divorce, she re-established contact with someone she had dated in high school, Mark Huber ("Huber"). In May of 2016, Huber moved in with Burrows. Huber found a job in Goshen, but did not have a driver's license and depended on Burrows for a ride to work. Burrows dropped Huber off at a church near his workplace every day around 3:00 a.m. before going to work herself. This had become the couple's routine for approximately six months.

[4] Burrows did not often communicate with Irvin. The two only saw each other when Irvin picked up their son. However, when the former couple did communicate, Irvin indicated that he was angry and blamed Huber for the divorce. Irvin wanted Burrows to give him another chance. Burrows was unwilling. On one occasion, Huber and Irvin had an angry exchange because Irvin had stopped paying his child support to Burrows.

[5]     On November 21, 2016, Burrows dropped Huber off at the church near his workplace around 3:00 am. Usually, Burrows would text Huber to let him know that she had arrived at work. Huber would always respond to her immediately, but on that day, there was no response. Burrows tried Huber's cell phone multiple times that day to no avail. When Burrows went back to the church after work to pick Huber up, he was not there. Huber never showed up to work that day, nor did he show up for work on the 22nd. Burrows filed a missing person report with police.

[6]     Several days after he disappeared, on November 25, 2016, Huber's body was discovered by a utility worker during a routine check of the sewer system in LaPorte County. Huber had been shot in the back of the head.

[7]     When detectives learned of the animosity between Huber and Irvin, Irvin became a suspect. When Irvin was questioned by detectives, he initially denied having anything to do with Huber's death. However, Irvin eventually admitted that he had arrived at the church before Burrows dropped off Huber on November 21, 2016. Irvin snuck up behind Huber while he sat at the church prior to work and shot him in the back of his head. Irvin transported the body to another county, discarded Huber's body in the sewer, and burned the victim's belongings. He also admitted to sending himself a text message from Huber's phone saying "[y]ou can have your slut of wife back now," which Irvin forwarded to Burrows in an attempt to get back together after Burrows realized Huber was missing. After confessing, Huber gave the murder weapon to police.

The State charged Irvin with murder. A bench trial was held on November 27-28, 2017, and Irvin was found guilty as charged. He was sentenced to sixty-four years in the Department of Correction. He appeals his sentence, arguing the sentence is inappropriate in light of Irvin's character and the nature of the offense.

## Discussion and Decision

Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Trainor v. State*, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007)), *trans. denied*. This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

Still, we must and should exercise deference to a trial court's sentencing decision because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Trainor*, 950 N.E.2d at 355 (quoting *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)). Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers" and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each

case. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans denied*. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[11] The sentence for murder carries a range from forty-five years as a minimum, to sixty-five years as a maximum, with fifty-five years as the advisory sentence. *Ind. Code* § 35-50-2-3. The maximum sentence is generally reserved for the worst offenses and offenders. *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind. 1998). In the instant case, the trial court imposed a sixty-four year sentence. Irvin asks this Court to revise his sentence to between forty-five and fifty-five years, arguing that the nature and circumstances of the offense do not reflect that his was the "very worst" crime of murder warranting a sentence of one year below the maximum.

[12] With respect to the character of the offender, Irvin has no prior criminal history. Also, Irvin eventually cooperated with investigators, confessed, and turned over the murder weapon. His risk assessment showed a low likelihood of re-offense. However, the trial court noted Irvin's lack of remorse, which reflects poorly on his character. Irvin argues no other character evidence.

[13] However, the nature of Irvin's offense was horrific. The record shows that Irvin carefully planned and carried out the murder. Irvin observed his victim's routine. He arrived at the church to wait for Huber to be dropped off at the church prior to work. Irvin was lying in the grass until he could sneak up on his victim. Irvin shot his victim in the back of the head, and transported the victim's body to another county, dumping Huber's body into a sewer. Irvin burned the victim's belongings to cover up his crime. Additionally, Irvin sent himself a text message from the victim's phone stating "you can have your slut of a wife back now," which he later showed to Burrows in an attempt to rekindle their marriage.

[14] The nature of the offense and Irvin's lack of remorse more than support the trial court's decision to impose a sixty-four year sentence. This Court is not persuaded that the Defendant's sentence is inappropriate.

[15] Affirmed.

Bailey, J., and Bradford, J., concur.