## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2018, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

Jennifer H. Culotta
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lisa Livingston,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 4, 2018

Court of Appeals Case No.
18A-CR-716

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-1308-FA-546

**Mathias, Judge.**

[1]  Lisa Livingston ("Livingston") presents two issues on appeal from the Orange Circuit Court, which we restate as: (1) whether the trial court abused its

discretion in its consideration of the mitigating and aggravating circumstances, and (2) whether Livingston's sentence is appropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

On August 6, 2013, police officers were investigating a theft when they received information that Livingston had been manufacturing and dealing methamphetamine out of her home. Based on this information, police sought and received a search warrant for Livingston's residence. During the execution of the warrant, Livingston confessed to dealing and manufacturing methamphetamine. She had manufactured to both sell and use. Livingston informed police that her vehicle contained methamphetamine, cocaine, and a lab. She also consented to police searching her vehicle.

Police recovered eleven baggies totaling 5.6 grams of methamphetamine and one baggie weighing 8.9 grams of cocaine. Police also recovered lithium batteries, salt, coffee filters, cold pills, airline tubing, ice packs, lighter fluid, and a pill grinder.

Shortly thereafter, in August 2013, the State charged Livingston with two Class A felonies: dealing in methamphetamine, and dealing in methamphetamine - possession with intent to deliver; Class C felony of possession of methamphetamine; and two Class D felonies: possession of cocaine and possession of two or more chemical reagents or precursors with the intent to

manufacture a controlled substance. The State later alleged that Livingston was a habitual substance offender.

[6] In November of 2013, Livingston posted a $75,000 property bond under the condition that she reside at Bliss House, a substance abuse recovery home. Livingston completed one year at the Bliss House and two years at its transitional house.

[7] The trial in the instant matter was continued a total of ten times, each at Livingston's request. These continuances amounted to an approximate four-year period between charging and an eventual guilty plea. In October of 2017, Livingston pleaded guilty as charged and admitted she was a habitual offender without plea agreement. The sentencing hearing took place in March of 2018.

[8] Between posting bond in November of 2013 and the sentencing hearing in March of 2018, Livingston took several positive steps in her life. In 2014, Livingston, along with her nephew, started a roofing and construction business. At the time of sentencing, this business provided her with an annual income of $80,000. In addition to managing this roofing business, in 2017, Livingston used her own savings to open BreakAway Recovery Home for women recovering from addiction. Livingston served as both the Executive Director and the night manager of the BreakAway Home. At the time of sentencing, the home housed fourteen women.

[9] In early 2017, Livingston petitioned the trial court for placement in a pre-trial home detention program, which the trial court denied. In late February of 2017,

Livingston voluntarily placed herself on home detention in neighboring Floyd County. While on this voluntary home detention, Livingston tested negative for every drug screen and reported her whereabouts to her case manager seven days per week.

[10] The trial court determined Livingston's guilty plea, her lack of further offenses, her successful completion of drug treatment, her gainful employment, including opening her own company, as well as her advocacy and support for drug treatment, to be mitigating factors. The trial court found Livingston's lengthy criminal history and two prior violations of pre-trial release to be aggravating factors.

[11] In March of 2018, after conducting a sentencing hearing, the trial court sentenced Livingston to concurrent terms of twenty-five years executed in the Department of Correction ("DOC") on Count 1, twenty-five years executed on Count 2, three years executed on Count 3, 365 days executed on Count 4, and 365 days executed on Count 5. The trial court enhanced this sentence by five years because Livingston was adjudicated a habitual substance offender. Livingston's aggregate sentence of thirty years, including the enhancement for the habitual substance offender, is the equivalent of the advisory sentence for a single Class A felony.

## Discussion and Decision

[12] Livingston argues that the trial court abused its discretion in three ways. First, she asserts that the trial court abused its discretion by failing to consider the

women of BreakAway as "dependents" for the purposes of Indiana Code section 35-38-1-7.1(b)(10). Second, Livingston argues that the trial court abused its discretion by using her financial means and community support as a way to minimize her accomplishments. Third, Livingston argues that the trial court abused its discretion by not placing Livingston in Community Corrections. Livingston also argues that the sentence imposed was inappropriate to the nature of the crimes and the character of the defendant. We now turn to Livingston's abuse of discretion arguments.

## I. Abuse of Discretion

[13] The trial court abuses its discretion only if its sentencing decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007). A trial court abuses its discretion by: (1) failing to enter a sentencing statement, (2) finding aggravating or mitigating factors unsupported by the record, (3) omitting mitigating factors clearly supported by the record and advanced for consideration, or (4) giving reasons that are improper as a matter of law. *Id.* at 490–91.

[14] Livingston first asserts that the trial court abused its discretion by rejecting her argument that the women of BreakAway are Livingston's dependents and these women will suffer an undue hardship due to her incarceration.

[15] We agree with the trial court and the State that the "dependent[s]"to which Indiana Code section 35-38-1-7.1(b)(10) refers does not include the women

housed at BreakAway. The legislature did not provide a specific definition of "dependent" as it is used in Indiana Code section 35-38-1-7.1(b)(10). Livingston cites no precedent, and we can find no precedent, in which a community or other personal non-familial relationship has been considered to be a dependent for the purposes of sentencing.

[16] Livingston argues that, by allowing a trial court to consider matters not specifically listed in Indiana Code section 35-38-1-7.1(b)(10), the legislature did not intend to prohibit the trial court's consideration of the effect that Livingston's incarceration would have on the women housed at BreakAway. *See* Ind. Code § 35-38-1-7.1. Livingston's argument is flawed because it assumes that the trial court did not consider the effect her incarceration would have on the recovery home. It does not follow that, because the trial court did not consider these women to be Livingston's dependents for the purposes of the statute, the trial court completely disregarded the work Livingston did with the home.

[17] In fact, the sentencing order in the instant matter specifically references that Livingston became an advocate for drug treatment and opened up her own treatment facility. The record shows that Livingston was the night manager and the Executive Director. However, the record also shows that BreakAway has a Board of Directors. Livingston was not the sole individual responsible for the management of BreakAway. Even more, Livingston started this recovery home knowing that she faced a significant sentence in this matter. For these reasons, the trial court did not abuse its discretion by not considering the women of

BreakAway to be Livingston's dependents for the purposes of Indiana Code section 35-38-1-7.1(b)(10).

[18] Additionally, Livingston argues that the trial court abused its discretion by referencing Livingston's financial resources and notoriety within the community during the sentencing hearing. Livingston focuses on two related points: (1) the trial court erred by basing its decision on a "legally erroneous comparison" of Livingston with other defendants; and (2) the trial court's reasoning is clearly against the effect of the facts and circumstances before it.

[19] Livingston asserts that the trial court abused its discretion by discounting the numerous letters sent to the court on Livingston's behalf by members of the community. In their entirety, these letters emphasize Livingston's positive character and her recent accomplishments within the community.

[20] However, there is nothing in the record to support Livingston's assertions that the trial court discounted the letters. At the sentencing hearing, the trial court explicitly stated that it read the letters. The accomplishments for which many of the letters applaud Livingston were listed as mitigating circumstances in the sentencing order. Showing that it considered the letters, the trial court stated that it was not going to sentence Livingston based on a public opinion poll, nor was it going to give her a break simply because she had more significant

financial resources than most offenders.[1] In making these statements, the trial court emphasized that it did not intend to treat Livingston differently than other defendants. As the trial court certainly considered the facts and circumstances of the matter at issue, we find neither legal error nor abuse of discretion.[2]

[21] Thirdly, Livingston argues that the trial court abused its discretion by declining to place her on Community Corrections. Sentencing placements are not reviewable for an abuse of discretion. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). This court addresses the argument in accordance with an inappropriate sentence standard of review.

## II. Inappropriate Sentence

[22] Indiana Appellate Rule 7(B) provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[23] Still, we must and should exercise deference to a trial court's sentencing decision because Rule 7(B) requires us to give "due consideration" to that

---

[1] The record shows that Livingston posted a $75,000 property bond in this matter and that she had an annual income of $80,000 at the time of sentencing.

[2] The trial court considered the mitigating and aggravating factors and determined these factors to cancel each other out. Contrary to Livingston's assertions that the trial court disregarded her recent accomplishments, the trial court expressly stated that it gave great weight to the improvements Livingston made to her life while on bond. Livingston's arguments that the trial court struck an improper balance of the mitigating and aggravating circumstances amounts to a request to this court to reweigh the evidence, which we cannot and will not do. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*.

decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Trainor v. State*, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011) (quoting *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)), *trans. denied.* Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers" and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied*. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). Whether a sentence is appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. When considering the character of the offender, an individual's criminal history is relevant to the trial court's determination. *Rutherford v. State,* 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[24] In the instant matter, the trial court imposed a thirty-year aggregate sentence for five felony convictions, including two Class A felonies, a Class C felony, two Class D felonies, and for being a habitual substance offender. Due to

Livingston's criminal history and the offenses at issue in this matter, Livingston was facing a minimum executed sentence of twenty-three years. *See* Ind. Code § 35-50-2-2(b)(1)[3] (court may suspend only that part of the sentence that is in excess of the minimum sentence if the crime committed was a Class A felony and the person has a prior unrelated felony conviction); Ind. Code § 35-50-2-10(f)[4] ("[t]he court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment"). She faced a maximum sentence of sixty-three years. *See* Ind. Code § 35-50-1-2(c)[5] (stating "the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony for which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted").

[25] Livingston argues that her thirty-year sentence to the DOC is inappropriate in light of the nature of the crime and the character of the defendant. In support of this argument, Livingston relies heavily on the life changes she has made since commission of the crimes at issue in the instant matter.

---

[3] We note that this statute was repealed effective July 1, 2014. Because Livingston committed her crimes prior to that date, we apply the statute in effect at the time she committed the offense.

[4] *See supra* note 3.

[5] *See supra* note 3.

[26] Indeed, Livingston made several commendable changes to her life since her arrest in the instant matter. She and her nephew opened a roofing business. This business provided her with significant income and employed five people in addition to providing work for several subcontractors. The record showed that Livingston had remained substance free. Livingston also became an advocate for substance abuse treatment. She established and served as the Executive Director and night manager of the BreakAway home, a home for women recovering from drug addiction. She did not re-offend during this period and entered into an open plea.

[27] However, Livingston has a lengthy criminal history including two misdemeanor convictions and two felony convictions. Livingston was dealing methamphetamine on a regular basis, and she was a habitual substance offender. Livingston had twice violated her pre-trial release on prior offenses, and she committed resisting law enforcement while on bond for possession of cocaine. Livingston committed the offenses in the instant matter while she was on bond for felony theft.

[28] Livingston pleaded guilty to serious drug offenses. She was manufacturing and distributing significant amounts of methamphetamine at the time of her arrest. The arresting officer testified that methamphetamine is incredibly dangerous, is one of the most mind-altering drugs, and affects more parts of the brain than other commonly used drugs. The arresting officer also testified that, in his experience, methamphetamine use often leads to commission of other crimes,

particularly theft, burglary, and robbery. He believed methamphetamine to be a driving force behind crime in the community.

[29] Although Livingston's recent accomplishments are commendable, in light of her lengthy criminal history and prior violations while on pre-trial release, this court does not find that the sentence in the instant matter is inappropriate.

[30] Livingston also challenges her placement at the DOC as inappropriate. The location where a sentence is to be served is an appropriate focus for application of a reviewing court's review and revision authority. *King,* 894 N.E.2d at 267 (citing *Biddinger v. State,* 868 N.E.2d 407, 414 (Ind. 2007)). As the question under Appellate Rule 7(B) analysis is "not whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate," it is "quite difficult" for a defendant to prevail on a claim that his placement is inappropriate. *Id.* at 267–68 (emphasis in original). "As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities." *Id.* at 268. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate. *Id.*

[31] In the instant case, Livingston expressly argues that she believes Community Corrections to be the only appropriate placement. However, the record lacks any argument or showing of why the DOC is an inappropriate location. Moreover, at the sentencing hearing, the trial court showed it considered Livingston's request, explaining that it did not believe the Community Corrections program to be appropriate for her length of sentence. Finding no

reason why the DOC is an inappropriate location for her sentence, we will not disturb the location of Livingston's sentence.

## Conclusion

[32] We cannot say that the trial court's decision was against the logic and effect of the facts and circumstances before the court. Accordingly, we find no abuse of discretion. Finally, we are not persuaded that the sentence imposed by the trial court is inappropriate.

[33] Affirmed.

Bailey, J., and Bradford, J., concur.